**Exhibit 1**

CASE  11-C-574                    KANAWHA                                    PAGE  1

MELISSA ADKINS, AS ADMINISTRAT vs. CONSOLIDATION COAL COMPANY

| LINE | DATE | ACTION |
|---|---|---|
| 1 | 04/07/11 | ISSUED SUM & 12 CPYS; F FEE; RCPT 471674; $145.00; CASE INFO SHEET; COMPLAINT W/EXH; (8) S/P BY RESTRICTED DELIVERY BY CM |
| 2 | | RCPT 471674; $160.00 |
| 3 | 04/13/11 | RMR AS TO TODD MOORE RET MARKED "FORWARDING O EXP" |
| 4 | 04/13/11 | RMR AS TO RICHARD MENLONE RET MARKED "FORWARDING O EXP" |
| 5 | 04/13/11 | LET FR SS DTD 4/11/11; SUM W/RET (4/11/11 SS) AS TO |
| 6 | | ENERGY INC. |
| 7 | 04/13/11 | LET FR SS DTD 4/11/11; SUM W/RET (4/11/11 SS) AS TO CONSOL |
| 8 | 04/13/11 | LET FR SS DTD 4/11/11; SUM W/RET (4/11/11 SS) AS TO |
| 9 | | CONSOLIDATION COAL CO. |
| 10 | 04/13/11 | RMR AS TO JOSEPH MORGAN SIGNED 4/9/11 |
| 11 | 04/13/11 | RMR AS TO LARRY MAYLE SIGNED 4/9/11 |
| 12 | 04/13/11 | RMR AS TO JAMES BROCK SIGNED 4/9/11 |
| 13 | 04/13/11 | RMR AS TO BRENT MCCLAIN SIGNED 4/9/11 |
| 14 | 04/18/11 | RMR AS TO WAYNE CONWAY SIGNED 4/13/11 |
| 15 | 04/20/11 | P'S MOT FOR ADM PRO HAC VICE OF GEOFFREY FIEGER W/EXH'S |

FILED

**CIVIL CASE INFORMATION STATEMENT**
**CIVIL CASES**

2011 APR -7 PM 4: 36

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

I.     CASE STYLE

Plaintiff(s)

Melissa Adkins, as Administratrix of the Estate of
Jessie Reuben Adkins                                    Civil Action No:  11-C- 574

c/o David A. Sims                                       Judge:  Bloom

The Law Offices of David A. Sims, PLLC

P.O. Box 2659

Elkins, West Virginia 26241

| | Defendant(s)<br>Name and Address | Days to<br>Answer | Type of<br>Service |
|---|---|---|---|
| 1. | Consolidation Coal Company<br>c/o CT Corporation System<br>5400 D Big Tyler Road<br>Charleston, WV 25313 | 30 | Service by the WV<br>Secretary of State |
| 2. | Consol Energy, Inc.<br>c/o CT Corporation System<br>5400 D Big Tyler Road<br>Charleston, WV 25313 | 30 | Service by the WV<br>Secretary of State |
| 3. | Todd Moore<br>Consol Energy, Inc.<br>1800 Washington Road<br>Pittsburgh, PA 15241 | 20 | Service by US<br>Certified Mail<br>(return receipt,<br>address restricted) |
| 4. | Richard Marlowe<br>Consol Energy, Inc.<br>1800 Washington Road<br>Pittsburgh, PA 15241 | 20 | Service by US<br>Certified Mail<br>(return receipt,<br>address restricted) |

PYMT Type
Rcpt #471674.1687  $145 X  $135___
Iss. Sum. +19cc      ___No Sum. Iss
___Ret. to Atty.        $20cm X
___Mailed CM/RM    X $5 clk X 2
___Mailed to sos w/ck#  7103
___Sent to _____ w/ck# _____

| 5. | James Brock<br>3300 Darrah Street<br>Morgantown, WV 26508 | 20 | Service by US<br>Certified Mail<br>(return receipt,<br>address restricted) |
|---|---|---|---|
| 6. | Brent McClain<br>RR 7 Box 322<br>Fairmont WV 26554<br>and<br>Brent McClain<br>Loveridge # 22 Mine<br>PO Box 40<br>Fairview, WV 26570 | 20 | Service by US<br>Certified Mail<br>(return receipt,<br>address restricted) |
| 7. | Wayne Conaway<br>P.O. Box 487<br>Farmington, WV 26571 | 20 | Service by US<br>Certified Mail<br>(return receipt,<br>address restricted) |
| 8. | Joseph Morgan<br>RR 1 Box 397<br>Shinnston, WV 26431 | 20 | Service by US<br>Certified Mail<br>(return receipt,<br>address restricted) |
| 9. | Larry Mayle<br>3842 Earl L Core Rd.<br>Morgantown, WV 26508-1520 | 20 | Service by US<br>Certified Mail<br>(return receipt,<br>address restricted) |

## II. TYPE OF CASE

| TORTS | OTHER   CIVIL | |
|---|---|---|
| ☐ Asbestos | ☐ Adoption | ☐ Appeal from Magistrate Court |
| ☐ Professional Malpractice | ☐ Contract | ☐ Petition for Modification of Magistrate Sentence |
| ■ Personal Injury | ☐ Real Property | ☐ Miscellaneous Civil |
| ☐ Product Liability | ☐ Mental Health | ☐ Other |
| ☐ Other Tort | ☐ Appeal of Administrative Agency | |

III.   JURY DEMAND: ■ Yes □ No

CASE WILL BE READY FOR TRIAL BY (MONTH/YEAR):  4/12

IV.   DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE
SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE? □ YES ■ NO
IF YES, PLEASE SPECIFY:

□ Wheelchair accessible hearing room and other facilities

□ Interpreter or other auxiliary aid for the hearing impaired

□ Reader or other auxiliary aid for the visually impaired

□ Spokesperson or other auxiliary aid for the speech impaired

□ Other: _____

Attorney Name: DAVID A. SIMS (Bar No. 5196)        Representing:

Firm: LAW OFFICES OF DAVID A. SIMS, PLLC         ■ Plaintiff          □ Defendant

Address: P.O. BOX 2659, ELKINS, WV 26241        □ Cross-Complainant   □ Cross-Defendant

Telephone: (304) 636-8000                        Dated: _____ April 6, 2011 _____

_____
Signature

□ Pro Se.

## CIVIL SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

MELISSA ADKINS, as Administratrix
of the Estate of JESSIE REUBEN ADKINS,

      Plaintiff,

v.                              Civil Action No.: 11-C-_574_

CONSOLIDATION COAL COMPANY,
a foreign corporation,
CONSOL ENERGY, INC.,
a foreign corporation,
TODD MOORE,
RICHARD MARLOWE,
JAMES BROCK,
BRENT MCCLAIN,
WAYNE CONAWAY,
JOSEPH MORGAN and,
LARRY MAYLE,

      Defendants.

To the above-named Defendant:

**Brent McClain**                     **Brent McClain**
**RR 7 Box 322**        **AND**       **Loveridge # 22 Mine**
**Fairmont, WV 26554**                **PO Box 40**
                                      **Fairview, West Virginia 26570**

**IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned and

required to serve upon David A. Sims, Plaintiff's Attorney, whose address is Post Office Box 2659,

Elkins, West Virginia 26241-2659, an answer including any related counterclaim you may have to the

complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to

you. You are required to serve your answer

exclusive of the day of service. If you fail

relief demanded in the complaint and you w

claim you may have which must be asserted

Dated: _April 8, 2011_

## CIVIL SUMMONS

### IN THE CIRCUIT COURT OF KANWAHA COUNTY, WEST VIRGINIA

MELISSA ADKINS, as Administratrix
of the Estate of JESSIE REUBEN ADKINS,

        Plaintiff,

v.

CONSOLIDATION COAL COMPANY,
a foreign corporation,
CONSOL ENERGY, INC.,
a foreign corporation,
TODD MOORE,
RICHARD MARLOWE,
JAMES BROCK,
BRENT MCCLAIN,
WAYNE CONAWAY,
JOSEPH MORGAN and,
LARRY MAYLE,

        Defendants.

Civil Action No.: 11-C-574

To the above-named Defendant:

**Wayne Conaway**
**P.O. Box 487**
**Farmington, WV 26571**

    **IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned and

required to serve upon David A. Sims, Plaintiff's Attorney, whose address is Post Office Box 2659,

Elkins, West Virginia 26241-2659, an answer including any related counterclaim you may have to the

complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to

you. You are required to serve your answer

exclusive of the day of service. If you fail to

relief demanded in the complaint and you wil

claim you may have which must be asserted b

Dated: April 8, 2011

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage | $
Certified Fee | RESTRICTED DELIVERY | Postmark Here
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required) | RECEIPT REQUESTED
Total Postage & Fees | $

Sent To
WAYNE CONAWAY
Street, Apt. No.; or PO Box No.
BOX 487
City, State, ZIP+4
Farmington, WV 26571

PS Form 3800, August 2006          See Reverse for Instructions



## CIVIL SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

MELISSA ADKINS, as Administratrix
of the Estate of JESSIE REUBEN ADKINS,

        Plaintiff,

v.

                                 Civil Action No.: 11-C-574

CONSOLIDATION COAL COMPANY,
a foreign corporation,
CONSOL ENERGY, INC.,
a foreign corporation,
TODD MOORE,
RICHARD MARLOWE,
JAMES BROCK,
BRENT MCCLAIN,
WAYNE CONAWAY,
JOSEPH MORGAN and,
LARRY MAYLE,

        Defendants.

To the above-named Defendant:

**Joseph Morgan**
**RR 1 Box 397**
**Shinnston, WV 26431**

      **IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned and required to serve upon David A. Sims, Plaintiff's Attorney, whose address is Post Office Box 2659, Elkins, West Virginia 26241-2659, an answer including any related counterclaim you may have to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within __20__ days a!

day of service. If you fail to do so, judgment by d

in the complaint and you will be thereafter barred f

which must be asserted by counterclaim in the abc

Dated: _April 8, 2011_



## CIVIL SUMMONS

### IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

MELISSA ADKINS, as Administratrix
of the Estate of JESSIE REUBEN ADKINS,

      Plaintiff,

v.                                    Civil Action No.: 11-C- 574

CONSOLIDATION COAL COMPANY,
a foreign corporation,
CONSOL ENERGY, INC.,
a foreign corporation,
TODD MOORE,
RICHARD MARLOWE,
JAMES BROCK,
BRENT MCCLAIN,
WAYNE CONAWAY,
JOSEPH MORGAN and,
LARRY MAYLE,

      Defendants.

To the above-named Defendant:

**Larry Mayle**
**3842 Earl L Core Rd.**
**Morgantown, WV 26508-1520**

    **IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned and
required to serve upon David A. Sims, Plaintiff's Attorney, whose address is Post Office Box 2659,
Elkins, West Virginia 26241-2659, an answer including any related counterclaim you may have to the
complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered
you. You are required to serve your answer withi
exclusive of the day of service. If you fail to do s
relief demanded in the complaint and you will be t
claim you may have which must be asserted by cou

Dated: April 8, 2011

By:

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com

OFFICIAL USE

Postage $
Certified Fee
Return Receipt Fee
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees $

RETURN RECEIPT REQUESTED    Postmark Here
RESTRICTED DELIVERY

Sent To  LARRY MAYLE
Street, Apt No.  3842 EARL L Core Road
City, State, ZIP+4  MORGANTOWN WV 26508-1520

PS Form 3800, August 2006    See Reverse for Instructions

## CIVIL SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

MELISSA ADKINS, as Administratrix
of the Estate of JESSIE REUBEN ADKINS,

       Plaintiff,

v.                             Civil Action No.: 11-C- **574**

CONSOLIDATION COAL COMPANY,
a foreign corporation,
CONSOL ENERGY, INC.,
a foreign corporation,
TODD MOORE,
RICHARD MARLOWE,
JAMES BROCK,
BRENT MCCLAIN,
WAYNE CONAWAY,
JOSEPH MORGAN and,
LARRY MAYLE,

       Defendants.

To the above-named Defendant:

**Todd Moore**
**Consol Energy, Inc.**
**1800 Washington Road**
**Pittsburgh, PA 15241**

      **IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned and

required to serve upon <u>David A. Sims</u>, Plaintiff's Attorney, whose address is <u>Post Office Box 2659,</u>

<u>Elkins, West Virginia  26241-2659,</u> an answer including any related counterclaim you may have to the

complaint filed against you in the above-styled civil

you.  You are required to serve your answer within

exclusive of the day of service.  If you fail to do so,

relief demanded in the complaint and you will be the

claim you may have which must be asserted by count

Dated:  *April 8, 2011*

By: _____
            Deputy

## CIVIL SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

MELISSA ADKINS, as Administratrix
of the Estate of JESSIE REUBEN ADKINS,

      Plaintiff,

v.                      Civil Action No.: 11-C-_574_

CONSOLIDATION COAL COMPANY,
a foreign corporation,
CONSOL ENERGY, INC.,
a foreign corporation,
TODD MOORE,
RICHARD MARLOWE,
JAMES BROCK,
BRENT MCCLAIN,
WAYNE CONAWAY,
JOSEPH MORGAN and,
LARRY MAYLE,

      Defendants.

To the above-named Defendant:

**Richard Marlowe
Consol Energy, Inc.
1800 Washington Road
Pittsburgh, PA 15241**

      **IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned and

required to serve upon David A. Sims, Plaintiff's Attorney, whose address is Post Office Box 2659,

Elkins, West Virginia 26241-2659, an answer including any related counterclaim you may have to the

complaint filed against you in the above-styled civil action ...

you. You are required to serve your answer wit

exclusive of the day of service. If you fail to do

relief demanded in the complaint and you will b

claim you may have which must be asserted by

Dated: _April 8 2011_

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | RETURN RECEIPT REQUESTED | Postmark Here |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | RESTRICTED DELIVERY |
| Total Postage & Fees | $ |

Sent To _Richard Marlowe_
Street, Apt. No.; or PO Box No. _1800 Washington Road_
City, State, ZIP+4 _Pittsburg PA 15241_

PS Form 3800, August 2006      See Reverse for Instructions

## CIVIL SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

MELISSA ADKINS, as Administratrix
of the Estate of JESSIE REUBEN ADKINS,

       Plaintiff,

v.                             Civil Action No.: 11-C-_574_

CONSOLIDATION COAL COMPANY,
a foreign corporation,
CONSOL ENERGY, INC.,
a foreign corporation,
TODD MOORE,
RICHARD MARLOWE,
JAMES BROCK,
BRENT MCCLAIN,
WAYNE CONAWAY,
JOSEPH MORGAN and,
LARRY MAYLE,

       Defendants.

To the above-named Defendant:

**James Brock**
**3300 Darrah Street**
**Morgantown, WV 26508**

    **IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned and

required to serve upon <u>David A. Sims</u>, Plaintiff's Attorney, whose address is <u>Post Office Box 2659,</u>

<u>Elkins, West Virginia 26241-2659</u>, an answer including any related counterclaim you may have to the

complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to

you. You are required to serve your answer withi

exclusive of the day of service. If you fail to do so

relief demanded in the complaint and you will be

claim you may have which must be asserted by co

Dated: _April 8, 2011_

By _____

## CIVIL SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

MELISSA ADKINS, as Administratrix
of the Estate of JESSIE REUBEN ADKINS,

           Plaintiff,

v.                                            Civil Action No.: 11-C- 574

CONSOLIDATION COAL COMPANY,
a foreign corporation,
CONSOL ENERGY, INC.,
a foreign corporation,
TODD MOORE,
RICHARD MARLOWE,
JAMES BROCK,
BRENT MCCLAIN,
WAYNE CONAWAY,
JOSEPH MORGAN and,
LARRY MAYLE,

           Defendants.

To the above-named Defendant:

**Brent McClain**                          **Brent McClain**
**RR 7 Box 322**          **AND**          **Loveridge # 22 Mine**
**Fairmont, WV 26554**                     **PO Box 40**
                                           **Fairview, West Virginia 26570**

**IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned and

required to serve upon David A. Sims, Plaintiff's Attorney, whose address is Post Office Box 2659,

Elkins, West Virginia 26241-2659, an answer including any related counterclaim you may have to the

complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to

you. You are required to serve your answer

exclusive of the day of service. If you fail to

relief demanded in the complaint and you will

claim you may have which must be asserted b

Dated: *April 8, 2011*

U.S. Postal Service
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage   $

Certified Fee
                                        Postmark
Return Receipt Fee                      Here
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees   $

Sent To

PS Form 3800, August 2006          See Reverse for Instructions

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

MELISSA ADKINS, as Administratrix
of the Estate of JESSIE REUBEN ADKINS,

     Plaintiff,

v.                              Civil Action No.: 11-C-_574_

CONSOLIDATION COAL COMPANY,
a foreign corporation,
CONSOL ENERGY, INC.,
a foreign corporation,
TODD MOORE,
RICHARD MARLOWE,
JAMES BROCK,
BRENT MCCLAIN,
WAYNE CONAWAY,
JOSEPH MORGAN and,
LARRY MAYLE,

     Defendants.

## COMPLAINT

COMES NOW Plaintiff, Melissa Adkins, as Administratrix of the Estate of Jessie Reuben Adkins, by and through her counsel, David A. Sims, Adam L. McCoy, and the Law Offices of David A. Sims, PLLC, and brings this action against Defendants, Consolidation Coal Company ("CCC"), Consol Energy, Inc. ("Consol"), Todd Moore, Richard Marlowe, James Brock, Brent McClain, Wayne Conaway, Joseph Morgan, and Larry Mayle for the physical injuries, mental anguish, and pain and suffering Plaintiff's decedent, Jessie Reuben Adkins, endured prior to his death and for all damages permitted for the wrongful death of Jessie Reuben Adkins. Plaintiff seeks punitive damages against Defendants to punish their willful, wanton and reckless conduct and to deter Defendants from placing coal profits above the lives of their coal miners, both now and in the future.

Page 1 of 30



When Mine Safety and Health Administration (MSHA) citations and fines are not enough to stop mining deaths, it is time for the civil justice system to intervene and protect coal miners from corporate greed exhibited by many companies in the mining industry.

## PARTIES

1.     Plaintiff Melissa Adkins is the duly appointed Administratrix and personal representative of the Estate of Jessie Reuben Adkins.  A copy of the Articles of Administration are attached hereto as "Exhibit A."

2.     Plaintiff Melissa Adkins is a citizen and resident of Barbour County, West Virginia, and was such citizen and resident at all times relevant to the acts complained of in this Complaint.

3.     Plaintiff's decedent, Jessie Reuben Adkins, was a citizen and resident of Barbour County, West Virginia and was employed by Defendant Consolidated Coal Company (CCC) as an underground coal miner at its Loveridge # 22 mine at all times relevant to this Complaint.

4.     Defendant Consolidated Coal Company (CCC) is a Delaware corporation with its principal office in Canonsburg, Pennsylvania, located at 1000 Consol Energy Drive, Canonsburg, Pennsylvania, 15317.  At all relevant times to this action, Defendant CCC has engaged in business throughout West Virginia and conducts business in Kanawha County, West Virginia.

5.     Defendant Consol Energy, Inc. (Consol) is a Delaware corporation with its principal office in Canonsburg, Pennsylvania, located at 1000 Consol Energy Drive, Canonsburg, Pennsylvania, 15317.  At all relevant times to this action, Defendant Consol has engaged in business throughout West Virginia and specifically in Kanawha County, West Virginia.

6.     Upon information and belief, Defendant Todd Moore is a citizen and resident of the State of West Virginia, and was such a citizen and resident at all times relevant to this Complaint.

Defendant Moore was employed by Defendant Consol as a corporate safety officer at the time of the rock fall that injured and killed Plaintiff's decedent, Jessie Reuben Adkins, and at all other times relevant to this Complaint.

7.    Upon information and belief, Defendant Richard Marlowe is a citizen and resident of the Commonwealth of Pennsylvania, and was such a citizen and resident at all times relevant to this Complaint.  Defendant Marlowe was employed by Defendant Consol as a corporate safety officer at the time of the rock fall that injured and killed Plaintiff's decedent, Jessie Reuben Adkins, and at all other times relevant to this Complaint.

8.    Upon information and belief, Defendant James Brock is a citizen and resident of Monongalia County, West Virginia, and was such a citizen and resident at all times relevant to this Complaint.  Defendant Brock was employed as the Vice President for the North-East Region of Defendant CCC and as its agent was a principal officer of Defendant CCC's Loveridge # 22 mine, at the time of the rock fall that injured and killed Plaintiff's decedent, Jessie Reuben Adkins, and at all other times relevant to this Complaint.

9.    Upon information and belief, Defendant Brent McClain is a citizen and resident of Marion County, West Virginia, and was such citizen and resident at all times relevant to the acts complained of in this Complaint.  Defendant McClain was employed as the Superintendent of Defendant CCC's Loveridge # 22 mine, and as Defendant CCC's agent, acted as a principal officer of that mine at the time of the rock fall that injured and killed Plaintiff's decedent, Jessie Reuben Adkins, and at all other times relevant to this Complaint.

10.    Upon information and belief, Defendant Wayne Conaway is a citizen and resident of Marion County, West Virginia, and was such citizen and resident at all times relevant to the acts

complained of in this Complaint. Defendant Conaway was employed as the Safety Director of Defendant CCC's Loveridge # 22 mine, and as Defendant CCC's agent and as a principal officer of that mine at the time of the rock fall that injured and killed Plaintiff's decedent, Jessie Reuben Adkins, and at all other times relevant to this Complaint.

      11.    Upon information and belief, Defendant Joseph Morgan is a citizen and resident of Harrison County, West Virginia, and was such citizen and resident of West Virginia at all times relevant to the acts complained of in this Complaint. Defendant Morgan was employed as a foreman mentor at the Defendant CCC's Loveridge # 22 mine, and was present and assisting the 9 South Mains section, left side crew of coal miners in the 18-D belt trench, at the Defendant CCC's Loveridge # 22 mine, at the time of the rock fall that injured and killed Plaintiff's decedent, Jessie Reuben Adkins, and at all other times relevant to this Complaint.

      12.    Upon information and belief, Defendant Larry Mayle is a citizen and resident of Monongalia County, West Virginia, and was such citizen and resident at all times relevant to the acts complained of in this Complaint. Defendant Mayle was employed as the left-side section foreman and day shift supervisor of the 9 South Mains section, at the Defendant CCC's Loveridge # 22 mine, and was acting as Defendant CCC's agent during the rock fall that injured and killed Plaintiff's decedent, Jessie Reuben Adkins, and at all other times relevant to this Complaint.

## FACTUAL BACKGROUND

      13.    Plaintiff reasserts and incorporates each and every allegation contained in the Complaint as if the same where reprinted verbatim herein.

      14.    At around 8:40 a.m. on July 29, 2010, the 9 South Mains section, left side crew of coal miners, including Jessie Reuben Adkins, arrived at the section to begin working in the 18-D belt

trench in the Loveridge # 22 mine.

15.    On that date, Jessie Reuben Adkins was working as an integral roof bolter operator on the left side of a Sandvik MB450 (commonly known as a Voest-Alpine or ABM 14) continuous mining machine in the 18-D belt trench in the 9 South Mains section of Defendant, CCC's, Loveridge # 22 mine, as he was instructed to do by his section foreman, Defendant Larry Mayle.

16.    On that date, Jessie Adkins's crew was developing the 18D belt trench belt overcast. Developing the trench required the miners to cut through the rock above the coal seam (the overcast). Mining an overcast in out-of-seam rock is a standard and routine practice in the mining industry, and is commonly known to create significant geological disturbances due to the harder density of the rock surrounding the softer coal seam, often times resulting in roof and rib falls.

17.    As was the common and accepted practice at the Loveridge # 22 mine, the continuous mining machine being operated by Jessie Reuben Adkins's crew that day was not equipped with integral rib bolters that were necessary to protect miners from rock falls from the mine's ribs, also known as rib rolls, during the mining process. Furthermore, it was a common and accepted practice to allow miners to work several shifts, up to and including the completion of a shaft, before portable rib bolting equipment was used to install rib support, exposing miners to ultra hazardous mining conditions during the process.

18.    At around 11:45 a.m., only a few moments after the crew began over-cutting the 18-D belt trench's roof, a rock measuring about six (6) to sixteen (16) inches thick, twenty-four (24) to fifty-five (55) inches high, and twenty-three (23) feet long fell from near the top of the eight and one half (8½) feet high roof and rib and crushed Plaintiff's decedent, Jessie Reuben Adkins, who was standing below along the left side of the continuous miner.

19.     Plaintiff's decedent, Jessie Reuben Adkins, was extracted from under the rock by his section crew using portable jacks and cribs to lift the rock. Plaintiff's decedent was brought out of the mine at around 1:20 p.m. and was pronounced dead by the Marion County Medical Examiner shortly thereafter.

20.     The ultra hazardous conditions in the 18-D belt trench were well-known and the subsequent rock fall was entirely foreseeable by all of the Defendants, their agents and/or employees, yet nothing was done to address the hazards and no precautions were taken to prevent this accident from occurring.

21.     The rock fall and Defendants' conduct were investigated by state and federal mine safety inspectors both before and after the rock fall resulting in the injury and death of Plaintiff's decedent, Jessie Reuben Adkins.

22.     Both Mine Safety and Health Administration ("MSHA") officials and officials from the West Virginia Office of Miner's Health, Safety, and Training ("WVOMHST") issued citations to Defendant CCC for violating state and federal mining safety rules, regulations and statutes in relation to the rock fall that injured and killed Plaintiff's decedent, Jessie Reuben Adkins.

23.     The state and federal investigations concluded that had mining safety standards, rules, regulations and statutes been followed by Defendants, Plaintiff's decedent, Jessie Reuben Adkins, would not have been injured and killed by the falling rock.

## DEFENDANTS WERE ON NOTICE OF HAZARDOUS CONDITIONS AND EXHIBITED A PATTERN AND PRACTICE OF EXPOSING MINERS TO THOSE HAZARDS

24.     Defendants have a long and storied history of consciously and continually violating mine safety rules, regulations and statutes for their failures to adequately protect coal miners from

unnecessarily hazardous rib and roof conditions and for exposing its miners to those hazards at the Loveridge # 22 mine. As of August 2010, Defendants' Loveridge # 22 mine was ranked fourth (4th) among all coal mines in the United States for the number of "serious and substantial" citations received since January 2009. Based upon this and other data indicating serious safety concerns at the Loveridge # 22 mine, it was one of eighty-nine (89) coal mines targeted by MSHA for "impact inspections" after the Upper Big Branch mine disaster of April 5, 2010, in hopes of preventing similar catastrophes. Unfortunately, MSHA citations and actions were not enough to prevent the death of Plaintiff's decedent, Jessie Reuben Adkins, who died three (3) months later at the Loveridge # 22 mine, because Defendants consciously disregarded the safety concerns that existed and continued to produce coal while exposing their miners to ultra hazardous conditions in the mine.

25.    According to the National Institute of Occupational Health and Safety ("NIOSH"), rock falls from roofs and ribs remain the number one hazard in the mining industry to coal miners, despite being entirely preventable by following industry accepted mining practices, and by following federal and state regulations and statutes.

26.    On June 29, 2010, just thirty (30) days prior the injury and death of Jessie Reuben Adkins, and on twenty-nine (29) occasions in the two (2) years prior to his death, MSHA cited the Loveridge # 22 mine for violating 30 C.F.R. § 75.220(a)(1) for Defendants' failure to develop and follow a safe and suitable roof control plan to protect its miners from rib and roof. Defendants were specifically told with that citation that they were going to get someone killed in that mine if they did not make changes to the roof control plan. Unfortunately, the MSHA inspector was right, Jessie Reuben Adkins died because changes were not made to the roof control plan.

27.    On July 26, 2010, just three (3) days prior to the injury and death of Jessie Reuben

Adkins, and on eighty-nine (89) occasions in the two (2) years prior to his death, MSHA cited Defendants for violating 30 C.F.R. § 75.202(a) for Defendants' failure to support or otherwise control the mine's roof and ribs and for exposing its miners to unnecessary hazards from rib or roof falls or rock or coal bursts.  MSHA had done its part by making these conditions known to the Defendants and their respective managers, officers and directors, Defendants merely ignored them.

28.     Defendants were on notice that miners were continually being exposed to hazardous roof and rib conditions in the Loveridge # 22 mine in violation of 30 C.F.R. § 75.202(a).  From April 6, 2010, until the rib fall on July 29, 2010, ten (10) of the fourteen (14) citations issued for exposing miners to hazardous rib and roof conditions specifically noted that the mine had received over eighty-eight (88) violations regarding this regulation within the last two (2) years of each violation. Despite the obvious frustration exhibited by MSHA inspectors in their subsequent citations, the Defendants took no action to prevent their miners from being exposed to ultra hazardous rib and roof conditions and Jessie Reuben Adkins died as a direct result.

29.     The majority of these violations were deemed "serious and substantial" by MSHA investigators, requiring:

    a.     an underlying violation of a mandatory standard;

    b.     the existence of a discrete safety hazard contributed to by the violation;

    c.     a reasonable likelihood that the hazard contributed to will result in an injury; and,

    d.     a reasonable likelihood that the injury in question will be of a reasonably serious nature.

*Secretary of Labor v. Mathies Coal Co.*, 6 FMSHRC 1, 3-4 (January 1984) (footnote omitted).  See also, *Buck Creek Coal, Inc. v.FMSHRC,* 52 F.3d 133, 135 (7th Cir. 1995); *Austin Power, Inc. v.*

*Secretary of Labor*, 861 F.2d 99, 103 (5th Cir. 1988) (approving *Mathies* criteria).

30.     Defendants were on notice that there were serious safety concerns regarding the Loveridge # 22 mine's rib and roof conditions and the adequacy of the mine's roof control plan that posed a significant risk of injury or death to miners.  In many of the above-referenced citations for violating 30 C.F.R. § 75.202(a), received immediately prior to Jessie Reuben Adkins's death, MSHA investigators specifically warned that many of the cited rib and roof hazards could have easily cost miners their lives.  Despite these expressed warnings from MSHA that someone was going to be killed, Defendants continued to operate the mine under the same roof control plan without protecting their miners from these ultra hazardous conditions.  In response, Defendants merely paid the citations and continued to mine coal with a conscious disregard for the lives and safety of their miners.

31.     In addition to these citations, Defendant CCC management personnel, including but not limited to Defendants Mayle and Morgan, knew that miners were experiencing hazardous rib and roof conditions in the 18-D belt trench, which had resulted in rocks falls from the ribs, roof, and face of the shaft, causing several temporary delays in production in the shifts immediately prior to the injury and death of Jessie Reuben Adkins.

32.     Despite Defendants' actual notice of the hazards present in the 18-D belt trench and elsewhere in the Loveridge #22 mine, Defendants took no steps to correct the inadequacies of the mine's roof control plan.  Further, Defendants failed to provide miners with integral rib bolting equipment to protect them from hazardous rib conditions and failed to stop work to address the known hazardous rib and roof conditions in the 18-D belt trench before requiring Plaintiff's decedent, Jessie Reuben Adkins, to work there.

33.     Not only were Defendants on notice of the hazardous conditions in the Loveridge #22

mine by the above citations, but also by the over two thousand two hundred (2200) violations received between 2008 and 2010 and the over Three Million Dollars ($3,000,000.00) levied in fines against the mine for violating federal mine safety and health regulations and statutes.

34.     In 2008, Loveridge # 22 mine was cited 832 times by MSHA for violations of mining safety rules, regulations and statutes with proposed penalties in the amount of Seven Hundred and Three Thousand and Seven Dollars ($703,007.00).

35.     In 2009, Loveridge # 22 mine was cited 725 times by MSHA for violations of mining safety rules, regulations and statutes with proposed penalties in the amount of One Million Eighty Nine Thousand Two Hundred and Sixty Seven Dollars ($1,089,267.00).

36.     In 2010, Loveridge # 22 mine was cited 701 times by MSHA for violations of mining safety rules, regulations and statutes with proposed penalties in the amount of One Million Two Hundred and Forty Eight Thousand Six Hundred and Six Dollars ($1,248,606.00).

37.     Despite being expressly warned by MSHA investigators with the eighty-nine (89) citations for exposing its miners to rib and roof hazards and the twenty-nine (29) citations for having an inadequate roof control plan or failing to follow it, officials of Defendants CCC and Consol ignored the warnings and did nothing to correct these ongoing hazards. In response to the accident that took the life of Plaintiff's decedent, Jessie Reuben Adkins, Defendant Consol's Executive Vice President and Chief Operations Officer at the time, and now President, Nick DeIuliis, stated, "[v]iolations for roof and rib controls are arbitrary...," demonstrating the contemptuous disregard with which Defendants received these warnings, even after the death of one of their miners. It is this corporate attitude against safety that has permitted the lives of our coal miners to be lost at Upper Big Branch and at Loveridge # 22.

38.     Despite Defendants' knowledge of the hazards that existed in the Loveridge # 22 mine, Defendants continued to subject miners to unreasonable risks of injury and death by failing to address the inadequacies of the roof control plan, by failing to properly address the rib and roof hazards present in the Loveridge # 22 mine, and by and failing to provide miners with rib bolting equipment for use as they advanced.

39.     "Chronic complainers have a place in the ultra-hazardous business of underground mining if the complaints are aimed at safety consciousness, and to overlook or ignore a naked safety complaint may well be negligence; to overlook or ignore a complaint which is founded upon good reason would surely be indicative of a deliberate intent to injure." *Nedley v. Consolidation Coal Company*, 571 F.Supp. 1528 (N.D.W.Va. 1984). It is this corporate attitude that permitted these safety violations to continue and for the lives of miners to be lost.

40.     Defendants' failure to correct the inadequacies of the roof control plan; Defendants' failure to properly address the rib and roof hazards; Defendants' failure to provide miners with adequate rib bolting equipment; and Defendants' continual exposure of miners to known and unreasonably hazardous working conditions, all show a conscious disregard and an intentional risk of the life, safety and health of miners by the Defendants as the standard pattern and practice of coal production at the Loveridge # 22 mine.

### MINERS AND SUPERVISORS WERE NOT PROPERLY TRAINED TO EVALUATE RIB AND ROOF CONDITIONS

41.     Defendant Consol failed to properly train and ensure proper training of coal miners at the Loverdige # 22 mine with regards to examining the rib and roof conditions while mining in violation of a specific regulation or statute that requires such training in violation of its obligation

to properly train Defendant CCC's miners and supervisors.

42.   Defendant Consol failed to properly train their section foreman and other supervisors, including but not limited to Defendants Morgan and Mayle, to adequately identify hazardous rib and roof conditions as required by state and federal law.

43.   Despite Defendant Consol's full knowledge that the miners and supervisors in the Loveridge # 22 mine had not been properly trained in evaluating and identifying hazardous rib and roof conditions, Defendant Consol required coal miners at the Loveridge # 22 mine to work without proper safety training and intentionally risked their safety, health, and lives, as Defendant Consol knew that improperly trained miners posed a significant risk of serious injury or death to themselves and other miners.

## INVESTIGATION OF THE FATALITY REVEALED OBVIOUS HAZARDS

44.   When MSHA and WVOMHST officials arrived at the 18-D belt trench on July 29, 2010 to investigate the death of Jessie Reuben Adkins, they required the area to be sealed off until the ribs and roof had been scaled of loose and jagged rock and proper rib supports installed, deeming the area too unsafe to investigate the accident until those measures were completed.

45.   After the 18-D belt trench had been made safe for entry, the mine inspectors performed an investigation of the accident wherein the work-site was examined, the geological conditions of the area were studied, and interviews were conducted to determine the circumstances and cause of the accident.

46.   As a result of the investigation of the July 29, 2010 rock fall that injured and killed Plaintiff's decedent, Jessie Reuben Adkins, MSHA issued three (3) citations for violating 30 C.F.R. § 75.220(a)(1) for an inadequate roof control plan, C.F.R. § 75.202(a) for exposing miners to

hazardous roof and rib conditions, and 30 C.F.R. § 75.363(a) for failure to stop work, seal the area, post notice of a hazardous condition, and correct it, and the WVOMHST issued a citation to the mine for violating West Virginia Code § 22A-2-25(a) for an inadequate roof control plan.

47.    The above-referenced citation for violating 30 C.F.R. § 75.363(a) specifically stated that "[t]he conditions of the 18-D belt trench had several areas were the ribs, consisting of coal and rock were loose and hanging.  Additionally[,] there were several cracks that were easily seen when traveling across the belt trench.   There were slickensides[, smooth surfaces indicating rock movement along a fault,] present in the immediate roof and running on angles into the rib lines." The description of the mining conditions under which Jessie Reuben Adkins was forced to work, along with other members of his crew, in these citations clearly indicate that the mining conditions were ultra hazardous and that mining should have been halted prior to the injury and death of Jessie Reuben Adkins.

48.    The root cause analysis performed by MSHA determined that the Loveridge # 22 mine's policies and administrative controls did not ensure that the ribs were adequately supported or otherwise controlled to protect persons from the hazards associated with rib rolls when mining out-of-seam.

49.    Defendants were aware of the inadequate support of the ribs and the hazardous conditions prior to the accident that killed Jessie Reuben Adkins, but permitted mining to continue knowing the risk that it posed to the lives of their miners.

50.    The root cause analysis performed by MSHA also determined that the continuous mining machines used at the Loveridge # 22 mine were unequipped or unable to install needed rib supports and was thereby unsuited for the geological conditions that existed in the mine.

51.     Defendants were aware and had consciously chosen not to provide the continuous miner machines with integral rib bolters, yet they continued to use that equipment thereby risking the lives of their miners.

52.     After the investigation, Defendants revised the roof control plan at the Loveridge # 22 mine and installed integral rib bolters on its continuous mining machines to allow it to install rib support while the continuous miner is advancing in out-of-seam mining. Each of the measures could have been done prior to the loss of Jessie Reuben Adkins' life, but were not done because it slows mining activities and slows the production of coal. Thus, it was cheaper to permit Jessie Reuben Adkins to die than it was to make the changes to the roof control plan and to install rib bolters on the machines, so Jessie Reuben Adkins died.

53.     As a result of the state and federal investigations of this tragedy, it was determined that certain records, including but not limited to pre-shift and call-out reports, regarding prior mining activities in the 18-D belt trench had been marked out or were otherwise altered, in an effort to conceal the truth about what had really happened prior to Jessie Reuben Adkins' death.

## DEFENDANTS INTENTIONALLY EXPOSED
## MINERS TO UNSAFE WORKING CONDITIONS

54.     Defendants' employees and personnel knew and had full appreciation of the extreme danger posed to the miners at the Loveridge # 22 mine due to the many stability and safety issues regarding the mine's walls, ribs, and roof.

55.     Defendants Moore and Marlowe, as corporate safety officers of Defendant Consol and Defendants Brock, McClain, and Conaway, as principal officers of Defendant CCC and the Loveridge # 22 mine, knew and had full appreciation of the extreme danger posed to the health,

safety and lives of the miners of the Loveridge # 22 mine due to hazardous rib and roof conditions because the numerous and continual MSHA citations issued to the mine for those very same hazards that directly stated the dangers posed to coal miners at that mine.

56.   Defendants Brock, McClain and Conaway knew that their sole function was to ensure the production of coal at the Loveridge # 22 mine and that safety was not important.

57.   Defendants Brock, McClain and Conaway were compensated, at least in part, based upon the production of coal at the Loveridge # 22 mine and they maximized that compensation by endangering the lives of the coal miners they were supposed to be protecting.

58.   Defendants Moore, Marlowe, Brock, McClain and Conaway were not concerned with the safety of miners at the Loveridge # 22 mine or they would have addressed the safety concerns that existed or ceased mining operations until those safety issues could be addressed.

59.   Defendants Mayle and Morgan knew and had full appreciation of the serious and imminent safety risks posed by the weak walls, ribs, and roof in the 18-D belt trench on July 29, 2010, because:

a.   they knew of the numerous prior MSHA citations issued at the Loveridge # 22 mine;

b.   they knew that the two shifts prior to Jessie Reuben Adkins' death had experienced numerous rock falls in that area, which had slowed mining activities and required substantial cleanup before mining could continue;

c.   they knew that the rock that killed Jessie Reuben Adkins was cracked and hanging at the beginning of the shift, but did nothing to address it and did not warn miners of its existence;

d.   they knew that cutting the overcast created significant geological disturbances in the surrounding rock; and

Page 15 of 30

e.    they knew that attempts to pry the rock loose had failed on the previous shift, but did not require the miners to remove the rock prior to exposing Jessie Reuben Adkins to that known danger.

60.    Neither Defendant Mayle nor Defendant Morgan performed any real inspection of the roof and ribs in the 18-D belt trench prior to requiring miners to work therein in violation of 30 C.F.R. 7 § 75.360, which requires that a pre-shift examination include "tests of the roof, face and rib conditions." Had any inspection been done, this area would have been shut down and the rock removed prior to anyone being killed.  Instead, Defendant Mayle was insisting that the coal miners produce coal under ultra hazardous conditions.

61.    Defendants Mayle and Morgan knew that production of coal was their only goal, as they received bonuses based upon coal production in the mine, and were constantly reminded that they were to produce coal above all else by their supervisors.

62.    Defendants Mayle and Morgan knew that safety concerns were not important to Defendants because of their continual failure to properly address the many safety hazards in the Loveridge # 22 mine, despite being cited and re-cited by MSHA officials for violating federal mine safety and health standards and regulations.

63.    Defendants Mayle and Morgan knew that hazardous rib and roof conditions existed in the 18-D belt trench and did nothing to address them, as neither of them stopped mining operations, sealed the area, posted notice of the danger, and/or removed the rock in violation of federal regulation contained in 30 C.F.R. § 75.363(a).

64.    Instead of addressing the inadequacy of the Loveridge # 22 mine's roof control plan and the rib and roof hazards that MSHA inspectors regularly and continually identified, Defendants

made a conscious decision that it was cheaper to pay the fines and continue production in the face of those hazards, rather than taking reasonable steps to alleviate the concerns. As a result, Jessie Reuben Adkins died.

65.     Despite all of the safety concerns that have been identified before and after the death of Jessie Reuben Adkins in the Loveridge # 22 mine, Defendants continued to produce coal with a conscious disregard for the life, safety and health of their miners, resulting in the death of Jessie Reuben Adkins.

66.     No reasonably prudent parent company would have permitted the unsafe operation to continue at the Loveridge # 22 mine. Despite the knowledge of Defendant Consol's officers and directors of the hazards present in the Loveridge # 22 mine, they let mining operations continue in violation of federal and state mining safety rules, regulations and statutes, and in conscious disregard for the lives, safety, and health of their coal miners.

## JURISDICTION AND VENUE

67.     Jurisdiction is proper in this matter pursuant to W. Va. Code § 56-3-33(a).

68.     Venue is proper in this Court pursuant to W. Va. Code § 56-1-1(a)(2), as the corporate defendants are foreign corporations that do business in the state of West Virginia and in Kanawha County.

## COUNT I
### Deliberate Intent Pursuant to W.Va. Code § 23-4-29(d)(2)(ii)
### (Defendant Consolidated Coal Company)

69.     Plaintiff reasserts and incorporates each and every allegation contained in the Complaint as if the same where reprinted verbatim herein.

70.     As the employer of Plaintiff's decedent, Jessie Reuben Adkins, and as mine operator

Page 17 of 30

of the Loveridge # 22 mine, Defendant CCC violated W. Va. Code § 23-4-2(d)(ii) in that:

a.     There existed in the Loveridge # 22 mine and the 18-D belt trench specific unsafe

working conditions, including, but not limited to unstable and improperly supported roofs, ribs, and

walls, which all presented a high degree of risk and a strong probability of serious injury or death

to each miner;

b.     Defendant CCC knew that the Loveridge # 22 mine and the 18-D belt trench

presented a high degree of risk and a strong probability of serious injury or death to its miners

because of unsafe working conditions including, but not limited to:

I.     improper support, weakness, and instability of the walls, ribs, and roof in the working

areas of the Loveridge # 22 mine, in violation of 30 C.F.R. § 75.202(a);

ii.     non-existent or ineffective policies and procedures to ensure that the walls, ribs, and

roof of the Loveridge # 22 mine were properly supported, stable, and safe, in violation of 30 C.F.R.

§ 75.220(a)(1) and West Virginia Code § 22A-2-25(a); and,

iii.     the failure to properly train miners and supervisors to adequately evaluate and identify

hazardous rib and roof conditions as required by state and federal law.

iv.     the failure to identify the hazard, stop work, seal the area, and post notice of a hazard

until the hazard had been addressed, in violation of 30 C.F.R. § 75.363(a).

c.     Prior to the rock fall that injured and killed Jessie Reuben Adkins, Defendant CCC

had actual knowledge of the existence of the specific unsafe working conditions and had full

appreciation of the high degree of risk and the strong probability of serious injury or death presented

by the specific unsafe working conditions identified in subparagraphs (I) through (iii) above.

d.     Defendant CCC knew that the specific unsafe working conditions were violations of

Page 18 of 30

a state or federal safety statutes, rules and/or regulations, and was cited for violations of commonly accepted and well-known safety standards within the coal industry, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the coal industry, which statute, rule, regulation or standard was specifically applicable to the particular work and working conditions involved in this incident, including but not limited to 30 C.F.R. § 75.202(a), 30 C.F.R. § 75.220(a)(1) and W.Va. Code § 22A-2-25(a), and 30 C.F.R. § 75.363(a);

     e.    Defendant CCC's violations of industry standards, statutes, rules, or regulations are the proper foundation for the element of deliberate intent where such statute, rule, regulation, or standard imposes a specific duty upon an employer and the employee is capable of application to the specific type of work at issue. *Ryan v. Clonch Indus., Inc.,* 219 W.Va. 664, 639 S.E.2d 756 (2006);

     f.    Notwithstanding the existence of the facts set forth above, Defendant CCC nevertheless intentionally thereafter exposed Jessie Reuben Adkins and other miners to the specific unsafe working conditions; and

     g.    Jessie Reuben Adkins suffered serious personal injuries and died as a direct and proximate result of the specific unsafe working conditions that existed at the Loveridge # 22 mine due to the conduct of Defendant CCC.

    71.    As a direct and proximate result of Defendant CCC's violation of W. Va. Code § 23-4-2(d)(ii), Plaintiff, Melissa Adkins, as Administratrix of the Estate of Jessie Reuben Adkins, is entitled to recover damages from Defendant CCC for Jessie Reuben Adkins's physical injury, anguish, pain, and suffering endured prior to his death, in an amount to be determined by the jury.

    72.    As a direct and proximate result of Defendant CCC's violation of W. Va. Code § 23-4-2(d)(ii), Plaintiff, Melissa Adkins, as Administratrix of the Estate of Jessie Reuben Adkins, is

entitled to recover from Defendant CCC all those damages set forth in W. Va. Code § 55-7-6 in an

amount to be determined by the jury.

## COUNT II
### Deliberate Intent Pursuant to W.Va. Code § 23-4-29(d)(2)(ii)
### (Defendants Brock, McClain, Conaway, Morgan, and Mayle)

73.     Plaintiff reasserts and incorporates each and every allegation contained in this

Complaint as if the same where reprinted verbatim herein.

74.     As principal officers and supervisors of Defendant CCC's Loveridge # 22 mine,

Defendants Brock, McClain, Conaway, Morgan, and Mayle violated W. Va. Code § 23-4-2(d)(ii)

in that:

a.     There existed in Defendant CCC's Loveridge # 22 mine and the 18-D belt trench

specific unsafe working conditions, including, but not limited to unstable and improperly supported

roofs, ribs, and walls, which presented a high degree of risk and a strong probability of serious injury

or death to the miners therein.

b.     Defendants Brock, McClain, Conaway, Morgan, and Mayle knew that the Loveridge

# 22 mine and the 18-D belt trench presented a high degree of risk and a strong probability of serious

injury or death to its miners because of unsafe working conditions including, but not limited to:

I.     improper support, weakness, and instability of the walls, ribs, and roof in the working

areas of the Loveridge # 22 mine to protect, in violation of 30 C.F.R. § 75.202(a);

ii.     non-existent or ineffective policies and procedures to ensure that the walls, ribs, and

roof of the Loveridge # 22 mine were properly supported, stable, and safe, in violation of 30 C.F.R.

§ 75.220(a)(1) and West Virginia Code § 22A-2-25(a); and,

iii.     the failure to identify the hazard, stop work, seal the area, and post notice of a hazard

until the hazard had been addressed, in violation of 30 C.F.R. § 75.363(a).

c.    Prior to the rock fall that injured and killed Jessie Reuben Adkins, Defendants Brock, McClain, Conaway, Morgan, and Mayle had actual knowledge of the existence of the specific unsafe working conditions and had full appreciation of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working conditions identified in subparagraphs (i) through (iii) above.

d.    Defendants Brock, McClain, Conaway, Morgan, and Mayle knew that the specific unsafe working conditions resulted in citations for violations of commonly accepted and well-known safety standards within the coal industry, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the coal industry, which statute, rule, regulation or standard was specifically applicable to the particular work and working conditions involved in this incident, including but not limited to 30 C.F.R. § 75.202(a), 30 C.F.R. § 75.220(a)(1) and W.Va. Code § 22A-2-25(a), and 30 C.F.R. § 75.363(a).

e.    The violations of statute, rule, regulation, or standard are a proper foundation for the element of deliberate intent where such statute, rule, regulation, or standard imposes a specific duty upon an employer and the employee is capable of application to the specific type of work at issue. *Ryan v. Clonch Indus., Inc.,* 219 W.Va. 664, 639 S.E.2d 756 (2006).

f.    Notwithstanding the existence of the facts set forth above, Defendants Brock, McClain, Conaway, Morgan, and Mayle nevertheless intentionally thereafter exposed Jessie Reuben Adkins and other miners to these specific unsafe working conditions.

g.    Jessie Reuben Adkins suffered serious personal injuries and died as a direct and proximate result of the specific unsafe working conditions that existed at the Loveridge # 22 mine

due to the conduct of Defendants Brock, McClain, Conaway, Morgan, and Mayle.

75.     As a direct and proximate result of Defendants Brock, McClain, Conaway, Morgan, and Mayle's violation of W. Va. Code § 23-4-2(d)(ii),  Plaintiff, Melissa Adkins, as Administratrix of the Estate of Jessie Reuben Adkins, is entitled to recover damages from them for Jessie Reuben Adkins's physical injury, anguish, pain, and suffering endured prior to his death, in an amount to be determined by the jury.

76.     As a direct and proximate result of Defendants Brock, McClain, Conaway, Morgan, and Mayle's violation of W. Va. Code § 23-4-2(d)(ii), Plaintiff, Melissa Adkins, as Administratrix of the Estate of Jessie Reuben Adkins, is entitled to recover damages from them as set forth in W. Va. Code § 55-7-6 in an amount to be determined by the jury.

**COUNT III**
Negligence
**(Defendants Consol, Moore, and Marlowe)**

77.     Plaintiff reasserts and incorporates each and every allegation contained in the Complaint as if the same where reprinted verbatim herein.

78.     As the parent company of Defendant CCC, Defendant Consol is the controller of the Loveridge # 22 mine and directly provides safety, technical and operational support and supervision to Defendant CCC at the Loveridge # 22 mine.

79.     Defendants Moore and Marlowe are corporate safety officers of Defendant Consol, and as such, are responsible for ensuring the training, safety and welfare of all coal miners working in mines controlled by Defendant Consol.

80.     Defendants Consol, Moore, and Marlowe owed a duty to Plaintiff's decedent, Jessie Reuben Adkins, and all other miners at the Loveridge # 22 mine, to provide safety, technical and

Page 22 of  30

operational support and supervision to Defendant CCC so as to ensure that federal and state mine safety and health standards, regulations, and statutes are complied with to protect the safety and welfare of all the miners in the Loveridge # 22 mine.

81. Defendants Consol, Moore, and Marlowe breached that duty owed to Plaintiff's decedent and all other miners at Defendant CCC's Loveridge # 22 mine by failing to provide technical and operational support and supervision to Defendant CCC in such a manner as to protect the safety and welfare of all miners at the mine by:

a. failing to correct mining conditions and safety practices and procedures at the Loveridge # 22 mine despite being on continual notice of recurrent rib and roof hazards therein;

b. failing to ensure that continuous mining machines operating in mines controlled by Defendant Consol were equipped with integral rib bolters to protect miners as they advance in unfavorable rib conditions or while mining out-of-seam; and,

c. failing to ensure that the Loveridge # 22 mine had a roof control plan sufficient to protect the health, safety, and lives of the miners from the hazards of rib and roof falls when experiencing unfavorable rib conditions or mining out-of-seam, as the Loveridge # 22 miners were often required to do.

d. failing to ensure that the miners and supervisors of the Loveridge # 22 mine were properly trained to adequately evaluate and identify hazardous rib and roof conditions as required by state and federal law.

82. As a direct and proximate result of Defendants Consol, Moore, and Marlowe's breach of their duty owed to Plaintiff's decedent and all other miners at Defendant CCC's Loveridge # 22 mine, Plaintiff's decedent, Jessie Reuben Adkins, was injured and killed by a rock fall on July 29,

2010.

83.    Defendants Consol, Moore, and Marlowes's conduct and subsequent breach of their duty owed to Plaintiff's decedent and all other miners at Defendant CCC's Loveridge #22 mine was grossly negligent and with reckless and wanton disregard of the lives, safety, and health of the miners therein.

84.    As a direct and proximate result of Defendants Consol, Moore, and Marlowe's negligence, Plaintiff, Melissa Adkins, as Administratrix of the Estate of Jessie Reuben Adkins, is entitled to recover damages from these Defendants for Jessie Reuben Adkins's physical injury, anguish, pain, and suffering endured prior to his death, in an amount to be determined by the jury.

85.    As a direct and proximate result of Defendants Consol, Moore, and Marlowe's negligence, Plaintiff, Melissa Adkins, as Administratrix of the Estate of Jessie Reuben Adkins, is entitled to recover from these Defendants all those damages set forth in W. Va. Code § 55-7-6 in an amount to be determined by the jury.

## COUNT IV
### Vicarious Liability
### (All Defendants)

86.    Plaintiff reasserts each and every allegation contained in the Complaint as if the same where reprinted verbatim herein.

87.    On July 29, 2010, Defendants Consol and CCC had the power of selection and engagement of persons to be responsible for corporate safety and the supervision of the Loveridge #22 mine and selected and engaged Defendants Moore, Marlowe, Brock, McClain, Conaway, Morgan, and Mayle for those purposes.

88.    Defendant CCC had the power and responsibility to control, direct and supervise the

activities of its principal employees and agents, Defendants Brock, McClain, Conaway, Morgan, and Mayle, in all respects while the Defendants were on the premises of the Loveridge # 22 mine.

89.     Defendant Consol had the power and responsibility to control, direct and supervise the activities of its corporate safety officers, Defendants Moore and Marlowe, in all respects while engaging in their duties of employment.

90.     On July 29, 2010 and at all times relevant to this Complaint, Defendants Moore, Marlowe were acting within their scope of employment as corporate safety officers and agents of Defendant Consol; Defendants Brock, McClain, and Conaway were acting within their scope of employment as principal mine officers and as agents of Defendant CCC; and Defendants Morgan and Mayle were acting within their scope of employment as supervisors and agents of Defendant CCC.

91.     Defendants Brock, McClain, Conaway, Morgan, and Mayle deliberately exposed the 9 South Mains section, left side crew of coal miners at the Loveridge # 22 mine to significant risk of serious injury or death, violating W. Va. Code § 23-4-2(d)(ii), and Defendants Moore and Marlowe failed to execute their duties with reckless disregard for the safety, health and lives of the coal miners at the Loveridge # 22 mine amounting to gross or wanton negligence.

92.     Defendants Consol and CCC approved of, condoned, and/or ratified the deliberate exposure of the 9 South Mains section, left side crew of coal miners, at its Loveridge # 22 mine to significant risk of serious injury or death and consciously failed to correct the known safety hazards present there.

93.     As a direct and proximate result of the Defendants Moore, Marlowe, Brock, McClain, Conaway, Morgan, and Mayle's tortious conduct, Jessie Reuben Adkins was injured and killed by

a rock fall on July 29, 2010.

94.    As the employers of Defendants Moore, Marlowe, Brock, McClain, Conaway, Morgan, and Mayle, who were acting within their scope of employment on July 29, 2010, and by approving of, condoning, and ratifying their actions, Defendants Consol and CCC are vicariously liable for the deliberate exposure of Jessie Reuben Adkins to significant risk of serious injury or death in violation of W.Va. Code § 23-4-2(d)(2)(ii) by Defendants Brock, McClain, Conaway, Morgan, and Mayle and the gross negligence of Defendants Moore and Marlowe, which proximately caused the serious bodily injury and death of the Plaintiff's decedent, Jessie Reuben Adkins.

### COUNT V
**Civil Conspiracy**
**(All Defendants)**

95.    Plaintiff reasserts and incorporates each and every allegation contained in the Complaint as if the same where reprinted verbatim herein.

96.    All Defendants were aware of the numerous violations of state and federal rules, regulations, and statutes that occurred at the Loveridge # 22 mine before the death of Jessie Reuben Adkins.

97.    Despite this knowledge, Defendants continued to allow unnecessary hazardous conditions to exist in the Loveridge # 22 mine and continued to require miners to work under those conditions.

98.    All Defendants participated in the decisions to continue to produce coal under the ultra hazardous conditions that existed in the Loveridge # 22 mine on July 29, 2010, in the pursuit of profit at the cost of exposing their miners to unreasonable risks of serious injury and death, all in violation of the law.

99.     All Defendants made a concerted decision that it was cheaper to violate the mining safety rules, regulations and statutes, than it was to properly address and correct the safety concerns that existed at the Loveridge # 22 mine.

100.     As a direct and proximate result of Defendants' civil conspiracy to violate mining safety rules, regulations and statutes, Plaintiff's decedent, Jessie Reuben Adkins, was injured and killed.

101.     As a direct and proximate result of Defendants' conspiracy to violate mining safety rules, regulations and statutes, Plaintiff, Melissa Adkins, as Administratrix of the Estate of Jessie Reuben Adkins, is entitled to recover damages from them for Jessie Reuben Adkins's physical injury, anguish, pain, and suffering endured prior to his death, in an amount to be determined by the jury.

102.     As a direct and proximate result of Defendants' conspiracy to violate mining safety rules, regulations and statutes, Plaintiff, Melissa Adkins, as Administratrix of the Estate of Jessie Reuben Adkins, is entitled to recover from them all those damages set forth in W. Va. Code § 55-7-6 in an amount to be determined by the jury.

## COUNT VI
### Compensatory Damages
### (All Defendants)

103.     Plaintiff reasserts and incorporates each and every allegation contained in the Complaint as if the same where reprinted verbatim herein.

104.     As a direct and proximate result of Defendants' joint and several actions, Plaintiff's decedent, Jessie Reuben Adkins, was forced to endure mental and physical injury, pain, and suffering before his death.

105.    As a direct and proximate result of Defendants' joint and several actions, Plaintiff and her family have lost their husband, father, friend, supporter and loved one, Jessie Reuben Adkins.

106.    As a direct and proximate result of Defendants' joint and several actions, Plaintiff and her family have suffered medical and funeral expenses.

107.    As a direct and proximate result of the Defendants' joint and several actions, Plaintiff's decedent Jessie Reuben Adkins's family members have suffered sorrow, mental anguish, loss of society, companionship, comfort, guidance, kindly offices, and advice of Jessie Reuben Adkins.

108.    As a direct and proximate result of the Defendants' joint and several actions the Plaintiffs' decedent, Jessie Reuben Adkins's, beneficiaries have suffered the loss of his income and benefits that he provided to them.

109.    As a direct and proximate result of the Defendants' joint and several actions, Plaintiffs' decedent, Jessie Reuben Adkins', family members have suffered loss of services, protection, care, and assistance provided them by Jessie Reuben Adkins.

110.    As a direct and proximate result of the joint and several actions of the Defendants, Plaintiffs' decedent, Jessie Reuben Adkins's, extended family and statutory beneficiaries have suffered other losses, damages, pain, emotional distress, and grief.

### COUNT VII
### Punitive Damages
### (All Defendants)

111.    Plaintiff reasserts and incorporates each and every allegation contained in the Complaint as if the same where reprinted verbatim herein.

112.    The conduct giving rise to and forming the basis of this Complaint was of such

willful, wanton, and reckless nature, and showed such conscious and gross indifference to the lives, safety, and health of the Loveridge # 22 miners as to warrant punitive damages against the Defendants.

113.    Punitive damages are necessary to punish Defendants for their continual and willful, wanton, and reckless exposure of miners to known hazardous conditions in the Loveridge # 22 mine, which cost the life of Plaintiff's decedent, Jessie Reuben Adkins.

114.    Based upon the long history of excessive safety citations at the Loveridge # 22 mine and the conduct and events giving rise to this Complaint, punitive damages are also necessary to deter Defendants from continuing the pattern and practice of exposing miners to known hazardous conditions in the Loveridge # 22 Mine, ensuring that other miner's lives will not be thrown away in the pursuit of coal profits.

**WHEREFORE,** Plaintiff demands judgment against the Defendants CCC, Consol, Moore, Marlowe, Brock, McClain, Conaway, Morgan, and Mayle for compensatory damages in an amount exceeding the jurisdictional requisite of this Court, punitive damages to punish the Defendants and deter such similar behavior in the future, pre-judgment and post-judgment interest, attorneys' fees, court costs, and such other relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**.

MELISSA ADKINS, as Administratrix
of the Estate of Jessie Reuben Adkins,
Plaintiff,

By Counsel,

David A. Sims (WV State Bar # 5196)
Adam L. McCoy (WV State Bar # 11405)

LAW OFFICES OF DAVID A. SIMS, PLLC
1200 Harrison Avenue, Suite 2000
P.O. Box 2659
Elkins, WV 26241
(304) 636-8000 (tel)
(304) 636-8001 (fax)

# Exhibit A

STATE OF WEST VIRGINIA,

BARBOUR COUNTY COMMISSION CLERK'S OFFICE,

IN VACATION OF SAID COURT,                           SEPTEMBER 22, 2010

    This day MELISSA D. ADKINS OF 400 BROWN AVE., BELINGTON/ WV 26416 appeared in said

Clerk's Office, before the undersigned Clerk of said Court, and upon motion of

    MELISSA D. ADKINS,   SHE                                    is hereby appointed

    ADMINISTRATRIX                                               of the estate of

    JESSIE RUEBEN ADKINS                                         deceased;

thereupon the said          MELISSA D. ADKINS                    together with

ROBERT E. HYMES
suret Y          , executed and acknowledged a bond in the penalty of   FIFTY FIVE THOUSAND

             ($55,000.00)                               Dollars conditioned as

the law directs for the faithful performance of      HER        duties as such

    ADMINISTRATRIX                              which said bond is hereby approved, and

the said      MELISSA D. ADKINS              took the oath prescribed by law, duly qualifying .

A true copy from the record.

            ATTEST:   *Macel L. Auvil* Clerk

                     MACEL L. AUVIL

            BY: _____

              DEPUTY CLERK.

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**SENDER: COMPLETE THIS SECTION**

- ☒ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☒ Print your name and address on the reverse so that we can return the card to you.
- ☒ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Richard Marlowe
Consol Energy, Inc
1800 Washington Road
Pittsburgh, PA
15241

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

RETURN RECEIPT REQUESTED
RESTRICTED DELIVERY

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number   7010 1870 0003 3366 6465

M-C-574
NST

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540



CERTIFIED MAIL

CLERK OF
KANAWHA COUNTY COURTHOUSE
P. O. BOX 2351
CHARLESTON, WEST VIRGINIA 25328

7010 1870 0003 3366 6465

UNDELIVERABLE
AS ADDRESSED
FORWARDING
ORDER EXPIRED

UNDELIVERABLE
AS ADDRESSED
FORWARDING
ORDER EXPIRED

RESTRICTED DELIVERY

RETURN RECEIPT REQUESTED

RESTRICTED DELIVERY

RETURN RECEIPT REQUE    D

ENDER: *COMPLETE THIS SECTION*

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

Todd Moore
Consol Energy Inc
500 Washington Road
Pittsburgh PA
15241

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (*Printed Name*)      C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

RESTRICTED DELIVERY

3. Service Type
☑ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)      ☑ Yes

2. Article Number
7010 1870 0003 3366 6434

11-C-574
NST

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540