UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MELISSA ADKINS, as
Administratrix of the Estate
of Jessie Reuben Adkins,

       Plaintiff,

v.                                    Civil Action No. 2:11-0285

CONSOLIDATION COAL COMPANY,
a foreign corporation,
CONSOL ENERGY, INC.
a foreign corporation
TODD MOORE, RICHARD MARLOWE,
JAMES BROCK, BRENT MCCLAIN,
WAYNE CONAWAY, JOSEPH MORGAN,
And LARRY MAYLE,

       Defendants.


MEMORANDUM OPINION AND ORDER


      Pending is plaintiff's motion to remand, filed May 23,

2011, and defendants' motion to dismiss, filed May 3, 2011.


      Where, as here, a motion to remand and a Rule 12(b)(6)

motion to dismiss are both made, it is ordinarily improper to resolve

the Rule 12(b)(6) motion before deciding the motion to remand.  The

question arising on the motion to remand as to whether there has been

a fraudulent joinder is a jurisdictional inquiry.  See Batoff v.

State Farm Ins. Co., 977 F.2d 848, 852 (3rd Cir. 1992); cf. Mayes

v. Rapoport, 198 F.3d 457, 460 (4th Cir. 1999) (observing that the

propriety of removal and fraudulent joinder are jurisdictional

questions).  For the reasons set forth below, plaintiff's motion to remand is granted.

## I.  Background

Plaintiff brings this action as the representative of the estate of her deceased husband, Jessie Reuben Adkins.  She is a resident of Barbour County, West Virginia.  Defendants Consolidation Coal Company ("Consolidation") and Consol Energy, Inc. ("Consol"), which is the parent of Consolidation, are Delaware corporations with principal places of business in Pennsylvania.[1] Defendant Richard Marlowe is a citizen of Pennsylvania.  Defendants Todd Moore, James Brock, Brent McClain, Wayne Conaway, Joseph Morgan, and Larry Mayle ("nondiverse defendants") are all citizens of West Virginia, and all but Moore were employed by Consolidation.  Moore, as well as Marlowe, were Consol employees.

---

[1] Plaintiff challenges the diversity of defendants Consolidation and Consol for the first time in her reply memorandum. As defendants note in their surreply, the Supreme Court recently clarified the test for determining a business's "principal place of business" by adopting, exclusively, the "nerve center" approach. See Hertz Corp. v. Friend, 130 S.Ct. 1181, 1192 (2010).  Inasmuch as both Consolidation and Consol are controlled and coordinated from the CNX Center, the companies' headquarters, located in Canonsburg, Pennsylvania, a location where senior level management is centrally located, plaintiff's challenge is without merit.

The following allegations are taken from the complaint. Jesse Adkins worked as a miner at Consolidation's Loveridge #22 mine in Marion County, West Virginia.  (Compl. ¶ 3).  On the morning of July 29, 2010, shortly after he began his shift at the mine, a large rock fell from a nearby roof and rib and crushed Mr. Adkins.  (Id. ¶ 18).  He died later that day.  (Id. ¶ 19).  At all relevant times, defendants Moore and Marlowe were corporate safety officers for Consol; Brock was a vice president for Consolidation's northeast region; McClain was the superintendent for Loveridge #22 mine; Conaway was the Safety Director for the mine; Morgan was a foreman mentor at the mine; and Mayle was a foreman and day shift supervisor at the mine.  (Id. ¶¶ 6-12).

Plaintiff, Mr. Adkins' widow, instituted this action in the Circuit Court of Kanawha County on April 7, 2011.  Defendants removed on April 26, 2011, invoking the court's diversity jurisdiction.  The complaint sets forth seven counts against defendants: Count I is a deliberate intent claim against Consolidation; Count II is a deliberate intent claim against Brock, McClain, Conaway, Morgan, and Mayle; Count III is a negligence claim against Consol, Moore, and Marlowe; Count IV is a vicarious liability claim against all defendants; Count V is a claim for civil conspiracy against all defendants; and Counts VI and VII simply request

3

compensatory and punitive damages, respectively.  (See id. ¶¶
69-114).

Plaintiff has moved to remand, asserting that the
nondiverse individual defendants defeat complete diversity and that
this court thus lacks subject matter jurisdiction.  In opposition
to remand, defendants claim that the nondiverse individual
defendants were fraudulently joined solely for the purpose of
defeating diversity jurisdiction.  Defendants have also moved to
dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on
several grounds discussed below.

II.   Motion to Remand

A.   Governing Standard

"A defendant may remove any action from a state court to
a federal court if the case could have originally been brought in
federal court."  Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th
Cir. 1996) (citing 28 U.S.C. § 1441).  Federal district courts have
original jurisdiction over actions between citizens of different
states in which the matter in controversy exceeds $75,000, exclusive
of interest and costs.  28 U.S.C. § 1332(a).

The doctrine of fraudulent joinder permits a district

4

court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).  Our court of appeals lays a "heavy burden" upon a defendant claiming fraudulent joinder:

> "In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

Id. at 464 (emphasis in original) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss."  Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).  Indeed, "'the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.'"  Mayes, 198 F.3d at 464 (quoting Marshall, 6 F.3d at 232-33)).

     As Hartley illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit.  Any shades of gray are resolved in favor of remand.  See Hartley, 187

5

F.3d at 425.  At bottom, a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . various uncertain questions of law and fact . . . Jurisdictional rules direct judicial traffic.  They function to steer litigation to the proper forum with a minimum of preliminary fuss.  The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper.  To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.
>
> * * * *
>
> We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case.  [Plaintiff's] claims may not succeed ultimately, but ultimate success is not required . . . .  Rather, there need be only a slight possibility of a right to relief.  Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

Id. at 425-26 (citations omitted).  In determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." Mayes, 198 F.3d at 464 (internal quotations omitted).

Inasmuch as defendants do not allege any fraud in the pleading, the only question for fraudulent joinder purposes is whether plaintiff has any possibility of recovery in state court against the nondiverse defendants.  The complaint asserts four

6

counts against the nondiverse defendants: Count II for deliberate intent against Brock, McClain, Conaway, Morgan, and Mayle; Count III for negligence against Moore; Count IV for vicarious liability against all defendants; and Count V for civil conspiracy against all defendants.

B.    Count II: Deliberate Intent Claim Against Nondiverse Defendants

1.    Statutory Background

The West Virginia Workers' Compensation Act generally immunizes covered employers from suits for damages "at common law or by statute" resulting from work-related injuries.  W. Va. Code § 23-2-6.  This immunity is, by West Virginia Code § 23-2-6a, extended "to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intent."

Immunity is lost, however, by an employer who acts with "deliberate intention."  Id. § 23-4-2(d)(2).  As set forth below, it may also be lost by an employee who acts with deliberate intent. If the deliberate intent exception applies, the injured employee may file an action for damages in excess of workers' compensation

benefits.  Id. § 23-4-2(c).

     Section 23-4-2(d)(2) starts with an introductory
provision setting forth in general terms the deliberate intent
exception to immunity.  That provision is followed by subsections
(d)(2)(i) and (d)(2)(ii), which provide two distinct methods of
proving that one has acted with "deliberate intention."  In its
entirety, § 23-4-2(d)(2) reads as follows:

> (2) The immunity from suit provided under this section and
> under sections six and six-a, article two of this chapter
> may be lost only if the employer or person against whom
> liability is asserted acted with "deliberate intention".
> This requirement may be satisfied only if:
>
> (i) It is proved that the employer or person against
> whom liability is asserted acted with a consciously,
> subjectively and deliberately formed intention to
> produce the specific result of injury or death to an
> employee.  This standard requires a showing of an
> actual, specific intent and may not be satisfied by
> allegation or proof of: (A) Conduct which produces a
> result that was not specifically intended; (B) conduct
> which constitutes negligence, no matter how gross or
> aggravated; or (C)  willful, wanton or reckless
> misconduct; or
>
> (ii) The trier of fact determines, either through specific
> findings of fact made by the court in a trial without a
> jury, or through special interrogatories to the jury in
> a jury trial, that all of the following facts are proven:
>
> (A) That a specific unsafe working condition existed in
> the workplace which presented a high degree of risk and
> a strong probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual
> knowledge of the existence of the specific unsafe working
> condition and of the high degree of risk and the strong
> probability of serious injury or death presented by the

specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of <u>the employer</u>, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, <u>the employer</u> nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W. Va. Code §§ 23-4-2(d)(2)(i)-(ii) (emphasis added). Plaintiff asserts a claim against five of the six nondiverse defendants pursuant to subsection (d)(2)(ii). (Compl. ¶¶ 73-76).

Defendants contend that the statutory text of § 23-4-2(d)(2)(ii) only permits claims against employers, not co-employees, and that plaintiff's claim against the five nondiverse defendants thus fails as a matter of law. They emphasize the differing terminology used in subsections (d)(2)(i) and (ii), noting

that subsection (i) includes the language, "the employer or person against whom liability is asserted," whereas subsection (ii) only references "the employer."  Plaintiff, on the other hand, points out that the introductory provision of subsection (d)(2) states that either "the employer or person against whom liability is asserted" may lose immunity if they act with deliberate intent.  This introductory language, plaintiff maintains, applies to both of the methods for proving deliberate intent outlined in subsections (d)(2)(i) and (ii).  The parties each rely upon caselaw in support of their respective positions that warrants detailed discussion.

### 2.    Caselaw and Analysis

          The court notes at the outset that the West Virginia Supreme Court of Appeals has had no occasion to address whether a deliberate intent claim under § 23-4-2(d)(2)(ii) may be pursued against a co-employee.  And the federal district courts in this state, when confronted with the issue in the fraudulent joinder context, have reached divergent conclusions.  The only two published opinions are Weekly v. Olin Corp., 681 F. Supp. 346, 352 (N.D. W. Va. 1987) (Kaufman, J.) ("this Court concludes that section 23-4-2(c)(2)(ii) applies to co-employees"; granting remand), and Evans v. CDX Servs., LLC, 528 F. Supp. 2d 599, 605 (S.D. W. Va. 2007) (Johnston, J.) (holding that "co-employees are not subject to suit

under § 23-4-2(d)(2)(ii) because that subsection only provides for actions against employers;" denying remand).[2]

The leading case supporting plaintiff's position is Weekly.  In Weekly, the court adopted the reasoning that

> [T]he introductory language of section 23-4-2(c)(2), which governs the application of all parts of section 23-4-2 and thus of both subsections 23-4-2(c)(2)(i) and 23-4-2(c)(2)(ii), speaks of "the employer or person" . . . [T]he two subsections merely represent two alternative methods of proving liability against either one or both of the employer and co-owner.

Id. at 352 (emphasis in original).[3]  The court in Weekly found its interpretation to be consistent with Bennett v. Buckner, 149 S.E.2d 201, 205 (W. Va. 1966).  Bennett is the only case cited in Weekly for support of its view that the scope of immunity afforded fellow employees under section 23-2-6a was intended by the legislature to be identical to that enjoyed by the employer.  Bennett did indeed

---

[2] The unpublished federal district court decisions following Weekly include Goudy v. McElroy Coal Co., No. 10-079, 2010 WL 4179254, at *4 (N.D. W. Va. Oct. 13, 2010); Burch v. Monarch Rubber Co., No. 06-760, slip op. at 5 (S.D. W. Va. Dec. 8, 2006); Williams v. Hasco Corp., No. 10-206, 2011 WL 3035272, at *3 (N.D. W. Va. July 22, 2011); Bledsoe v. Brooks Run Mining Co., No. 05-464, 2011 WL 5360042 (S.D. W. Va. Nov. 4, 2011).

Those following Evans include King v. Sears Roebuck & Co., No. 1:10-1024, 2011 WL 672065, at *4 (S.D. W. Va. Feb. 14, 2011); Fincham v. Armstrong, No. 2:08-101, slip op. at 10-11 (N.D. W. Va. Nov. 7, 2008); Stover v. Matthews Trucking, Inc., No. 2:11-cv-180, 2011 WL 6141099 (S.D. W. Va. Dec. 9, 2011) (in motion to dismiss context).

[3] At the time Weekly was published, the statute was codified at West Virginia Code § 23-4-2(c).  The section may now be found at § 23-4-2(d).

11

hold that the purpose of the legislature in adding section 23-2-6a in 1949 was "to 'extend' the same immunity and to accord an immunity identical with that of the employer to additional persons, including fellow employees." 149 S.E.2d at 205.  Overlooked in <u>Weekly</u> is that the two-tiered deliberate intention definition now found in section 23-4-2(d)(2) was not enacted until 1983, and, thus, did not exist when <u>Bennett</u> was decided in 1966.

And so, one returns to the language of the statute itself to determine its meaning, as did the court in <u>Evans</u>.  "'The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.'"  Syl. pt. 2, <u>Cmty. Antenna Serv., Inc. v. Charter Commc'ns. VI, LLC</u>, 712 S.E.2d 504, 508 (W. Va. 2011) (quoting syl. pt. 1, <u>Smith v. State Workmen's Comp. Comm'r</u>, 219 S.E.2d 361 (W. Va. 1975)).  "'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.'"  Syl. pt. 4, <u>id.</u> (quoting <u>Smith</u>, 219 S.E.2d 361).  Moreover, a "cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute."  Syl. pt. 2, <u>T. Weston, Inc. v. Mineral Cnty</u>, 638 S.E.2d 167, 169 (W. Va. 2006) (quoting syl. pt. 3, <u>Meadows v. Wal-Mart Stores, Inc.</u>, 530 S.E.2d 676 (W. Va. 1999)).

12

The introductory provision in section 23-4-2(d)(2) specifies that immunity "may be lost only if the employer or person against whom liability is asserted acted with deliberate intention," adding that this requirement may be satisfied only if either of the two standards that follow is satisfied.  The first, under subsection (i), specifies that immunity may be lost if "[i]t is proved that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee.  [It] requires a showing of an actual, specific intent . . . ."  Thus, immunity is lost by an employer for a workplace injury to an employee inflicted with specific intent; and immunity is lost as well by an employee who injures a co-employee with specific intent.

The second, under subsection (ii), specifies that immunity is lost if all of the five factors there stated are proven.  Nowhere in subsection (ii) does the term "person" appear.  Whereas the term "employer or person" is specifically set forth in subsection (i), only "employer" appears in subsection (ii).  So, while "employer" appears repeatedly throughout subsection (ii), the term "person" is completely absent.  The contrast is stark and telling.

Surely, the legislature did not intend, by the express language it used in section 23-4-2(d)(2)(ii), to withdraw immunity

13

from an employee simply because the <u>employer</u> had actual knowledge of the existence of the specific unsafe working condition and the <u>employer</u> had actual knowledge of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition.  Just as surely, the legislature did not intend to withdraw immunity from an employee simply because it was the <u>employer</u> who exposed a co-employee to the specific unsafe working condition.  Such an unacceptable result is readily avoided by giving apt meaning to all parts of section 23-4-2(d)(2).

The court concludes that employee immunity may be lost under section 23-4-2(d)(2)(i), but not under section 23-4-2(d)(2)(ii).  This reading of these statutory provisions gives full meaning to the word "employer" where it appears and the word "person" where it appears.  Every word, every phrase, and every clause is construed in connection with the whole statute so as to harmonize all parts and faithfully apply the language the legislature adopted.  What this reading does not do is add words to subsection 23-4-2(d)(2)(ii) that are not there.

So it is that the court discerns that the legislature has chosen not to withdraw immunity from an employee who has acted in furtherance of his employment but without specific intent to injure a co-employee.  The legislature may well have done so in order to

14

protect supervisors and other employees, acting without specific
intent, from suit where the employer, also without specific intent,
is deemed to have inflicted injury under (d)(2)(ii).  Further, the
employer is customarily liable for the grievous acts of his employees
committed in the course and scope of their employment; and, as between
the employer and its offending employee, it is the employer who is
near always the lone source of funds to redress a deliberate intent
workplace injury — for which the employer remains responsible under
both (d)(2)(i) and (d)(2)(ii).  In any event, though the immunity
afforded employer and employee alike was at one time virtually
identical, that is no longer the case, commencing with the 1983
enactment of what is now section 23-4-2(d)(2).

     Inasmuch as Count II deliberate intent liability of
nondiverse defendants Brock, McClain, Conaway, Morgan, and Mayle is
sought only under section 23-4-2(d)(2)(ii), there is no possibility
of deliberate intent recovery against any of the five.

     The same five defendants are immunized from the only
remaining counts against them —- Count IV for vicarious liability
and Count V for conspiracy.  The West Virginia Workers' Compensation
Act provides immunity for covered employers and other designated
persons or entities from suits for "damages at common law or by
statute" resulting from work-related injuries.  W. Va. Code §

15

23-2-6; id. § 23-2-6a.  Indeed, "[t]he establishment of the workers'
compensation system . . . was and is intended to remove from the common
law tort system all disputes between or among employers and employees
regarding compensation to be received from injury or death to an
employee . . . ."  Id. § 23-4-2(d)(1) (emphasis added).  Inasmuch
as plaintiff alleges causes of action in Counts IV and V not excepted
from the immunity conferred by the statutory scheme, there is no
possibility of recovery thereunder against any of the five nondiverse
defendants, Brock, McClain, Conaway, Morgan, and Mayle.

Consequently, fraudulent joinder as to nondiverse
defendants Brock, McClain, Conaway, Morgan, and Mayle is firmly shown
and they are appropriately dismissed.

C.    Count III: Negligence Claim Against Consol and Nondiverse
      Defendant Moore

Plaintiff claims in Count III that Consol along with Moore,
a nondiverse defendant and corporate safety officer employed by
Consol, breached their duty of care to plaintiff's decedent with
respect to safety operations at Loveridge # 22 mine.  Defendants
counter that Consol and Moore are immune from common law suit under
the West Virginia Workers' Compensation Act, which extends the
general immunity of employers "to every officer, manager, agent,

16

representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intent."  W. Va. Code § 23-2-6a (emphasis added). Consol claims "agent" status for remand purposes on two distinct grounds; and Moore is treated as its subagent entitled to the same status.  Consol and Moore advance several arguments in support of their immunity claims.

### 1.    Agency

Defendants contend that Consol and Moore are entitled to immunity under § 23-2-6a inasmuch as, at the time of the fatal injury to Adkins, Moore was an employee of Consol, an entity that, if the allegations of the complaint are true, was itself an agent of Adkins' employer, Consolidation, for purposes of agent immunity under § 23-2-6a.  Defendants argue that Moore, as a subagent of Consol, must be extended immunity under § 23-2-6a upon application of basic principles of agency.

### a.   Consol's Role as Guarantor-Administrator

In the Notice of Removal, defendants state that Consol, and by extension its employee Moore, has statutory immunity pursuant to West Virginia Code §§ 23-2-6, 6a, 9, "by virtue of being a

17

'manager,' 'agent' or 'representative'" of Consolidation (Not. of Rem. ¶ 7b).   It is stated that Consol enjoys such immunity in that Consol is guarantor of Consolidation's self-insured worker's compensation obligations for which Consol provides a surety bond; and that Consol "utilizes accounting measures and undertakes other activities which makes possible and undergird [Consolidation's] worker's compensation benefit program."  (Id. ¶ 7b).  The defendants attach to their response to the motion to remand copies of three supporting documents, consisting of Consolidation's Certificate of Self-Insurance, the surety bond and the Unconditional and Continuing Parental Guaranty.

For Consol's role as "agent," defendants rely on Wetzel v. Employers Service Corp. of W.Va., 656 S.E.2d 55 (W. Va. 2007). There, the defendant, Employees Service Corp. ("ESC"), was responsible for administering the worker's compensation program for the employer, including processing and paying all valid worker's compensation-related payment requests.  The estate of an employee who died allegedly due to toluene exposure on the job sued ESC for allegedly contributing to the death by failing to pay various medical bills.  The court afforded immunity to ESC as an "agent" under § 23-2-6a.

18

As more fully set forth in the section next below, the complaint in this case alleges that Consol directly provided safety, technical and operational support and supervision to Consolidation at the Loveridge #22 mine; and that Consol and Moore owed a duty to Atkins and the other miners to do so in order to ensure that federal and state mine safety standards were complied with to protect the safety and welfare of all of the miners.

Whether the West Virginia Supreme Court would apply <u>Wetzel</u> so as to afford "agent" immunity to a worker's compensation guarantor-administrator not only for that purpose, but also for assisting the employer in the operation of the employer's business, such as the underground mining operation in this case, is not necessarily settled by <u>Wetzel</u>.  The possibility remains that a claim against such an "agent" entity for an on-the-job injury relating to its additional role in the operation of the underlying business would not be deemed barred by immunity under § 23-2-6a.  Accordingly, there remains at least a "glimmer of hope" that such a claim may succeed. As Consol's employee, Moore occupies a position similar to that of Consol.

b.   Allegations of the Complaint

According to the allegations in the complaint, Adkins was

19

employed by Consolidation as a miner and Moore was employed by Consol as a corporate safety officer. (Compl. ¶¶ 3, 6). The Loveridge #22 mine is alleged to be Consolidation's mine and Consolidation is the operator of it. (Id. at ¶¶ 70, 74). Consol, as the parent company of Consolidation, is alleged to be the "controller" of the mine and directly provides safety, technical, and operational support and supervision to Consolidation at the mine. (Id. at ¶ 78). It is alleged that Consol and Moore owed a duty to Adkins and the other miners to provide such support and supervision to Consolidation so as to ensure that federal and state mine safety standards were complied with in order to protect the safety and welfare of all of the miners. (Id. at ¶ 80). It is further alleged that Consol and Consolidation had the power of selection and engagement of persons responsible for corporate safety and supervision of the mine and selected and engaged Moore as well as Marlowe, Brock, McClain, Conaway, Morgan, and Mayle for those purposes. (Id. at ¶ 87). That allegation, however, is tempered and narrowed by the two allegations that immediately follow: Consol had the power to control, direct, and supervise the activities of Moore and Marlowe in all respects while engaging in their duties of employment (id. at ¶ 89), and Consolidation had the same power to control, direct, and supervise the activities of its employees and agents. (Id. at ¶ 88).

20

Although the complaint does not state that Consol or Moore is an agent of Consolidation, Consol and Moore assert that the complaint alleges that which, if true, describes Consol as the agent of Consolidation and Moore as the subagent of Consol with respect to safety, technical, and operational support and supervision at the mine.

While Consol asserts that the allegations of the complaint describe circumstances that cast the parent Consol as the agent of its subsidiary, Consolidation, at no point does the complaint expressly allege such an agency relationship.  Neither does Consol acknowledge it is in fact and law the agent of Consolidation other than with respect to its role as guarantor of Consolidation's self-insured workers' compensation obligations for which Consol provides a surety bond, together with Consol's utilization of accounting measures and other activities which make possible and undergird Consolidation's workers' compensation benefit program.

Though some of the allegations of the complaint may be construed as suggesting that Consol is the agent of its subsidiary Consolidation, the reverse is also true.  The parent Consol is alleged to be the "controller" of Consolidation's Loveridge #22 mine, from which it could be inferred that Consolidation is the agent of Consol.  At the least, that allegation diminishes the defendants'

21

theory that the allegations of the complaint establish the parent as an operational agent of its subsidiary -- a relationship which neither Consol nor any defendant admit.  Consequently, the possibility of recovery against Consol and Moore remains, and fraudulent joinder as to nondiverse defendant Moore is not shown.

              2.   The Public Policy of Guarantor Immunity

              Defendants also advance an admittedly novel argument for immunity based on considerations of public policy, in which they contend that when a parent company guarantees the workers' compensation obligations of its self-insured subsidiary, the parent company acquires the workers' compensation immunity of that subsidiary.  Defendants assert that because the parent company Consol guaranteed the workers' compensation obligations of its subsidiary Consolidation, Consol and its employee, Moore, should be afforded the benefits of workers' compensation immunity. Defendants cite a single decision of the Supreme Court of Tennessee in support.  See Malkiewicz v. RR Donnelley & Sons, 794 S.W.2d 728 (Tenn. 1990).  This proposition is not shown to have been adopted in West Virginia and remains an open question.

### 3.    Joint Venture

Defendants argue that Moore is immune inasmuch as allegations in the complaint, if accepted as true, demonstrate the existence of a joint venture between all the defendants such that the workers' compensation immunity afforded to Consolidation is extended to Moore.  See Harmon v. Elkay Mining Co., 500 S.E.2d 860, 864 (W. Va. 1997) (noting that joint venturers share workers' compensation immunity).

Under West Virginia law, a joint venture "'is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge.'" Armor v. Lantz, 535 S.E.2d 737, 742 (W. Va. 2000) (quoting Price v. Halstead, 355 S.E.2d 380, 384 (W. Va. 1987)).  "[A] joint venture arises out of a contractual relationship between the parties.  The contract may be oral or written, express or implied." Price, 355 S.E.2d at 384; accord Sipple v. Starr, 520 S.E.2d 884, 892 (W. Va. 1999).  "[M]embers of a joint venture are . . . jointly and severally liable for all obligations pertaining to the joint venture, and the actions of the joint venture bind the individual co-venturers." Armor, 535 S.E.2d. at 742.  While the Supreme Court of Appeals has "never formulated any broad analytical test by which to determine the existence of a

23

joint venture," it has identified the "existence of certain 'distinguishing elements or features' essential to the creation of a joint venture."  <u>Armor</u>, 535 S.E.2d at 743.  In particular, "'[a]n agreement, express or implied, for the sharing of profits is generally considered essential to the creation of a joint adventure, and it has been held that, at common law, in order to constitute a joint adventure, there must be an agreement to share in both the profits and the losses.'"  <u>Id.</u> (quoting <u>Pownall v. Cearfoss</u>, 40 S.E.2d 886, 893−94 (W. Va. 1946) (citations omitted).  Here, in particular, an agreement to share in the profits has not been alleged.  Thus, a key element of the doctrine of joint venture has not been alleged and joint venture is inapplicable at this stage.

### III.   Conclusion

Viewing all questions of law and fact in plaintiff's favor, the court is unable to conclude that plaintiff has no possibility of a right to relief against nondiverse defendant Moore.  In view of this, the court lacks diversity jurisdiction.  Remand is appropriate.

Based upon the foregoing discussion, it is ORDERED as follows:

1.  That plaintiff's motion to remand be, and it hereby is, granted; and

2.  That this action be, and it hereby is, remanded for all further proceedings to the Circuit Court of Kanawha County.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and a certified copy to the Circuit Court of Kanawha County.

DATED: April 13, 2012

_____
John T. Copenhaver, Jr.
United States District Judge